THE HANNIBAL AND ST. JOSEPH RAILROAD COMPANY, Plaintiff in Error, *v.* MARION COUNTY, Defendant in Error.

1. *Practice—Evidence—Objections.*—Objections made to the admission of evidence, without specifying the reasons therefor, will not be noticed in the appellate court.

2. *Corporations—Counties.*—Corporations must act strictly within the limits of the powers conferred upon them by the act creating them. A county is a political division of the State, and a *quasi* corporation—performing in part the duties of the State, as an auxiliary of the government and a trustee for the people. An act of the Legislature investing the county court with power to do certain acts, necessarily implies the right to use the fit and appropriate means. Where, by an order of record, the county court ordered that a subscription be made for the stock of a railroad in accordance with an authority conferred by the charter of the company, a subsequent order of the court appointing an agent to enter the subscription upon the books of the company was a proper method for completing the subscription; the agent was a mere instrument executing an order. A subsequent ratification of the subscription by the court, under an act authorizing the same, would make the contract binding although it had been originally void.

3. *Estoppel—Corporations, municipal.*—Where a county, acting under an authority it supposed to be valid, subscribed to the stock of a railroad compa-

ny in good faith—issued its coupon notes in payment of such subscription— for a series of years voted such stock and paid its coupons—and such notes passed into the hands of innocent and *bona fide* purchasers,—it is estopped from asserting that such notes were illegally issued.*

### Error to Marion Circuit Court.

*Jos. L. Hart*, for plaintiff in error.

I. The county had no power, in the absence of an express legislative enactment, to subscribe for stock in the railroad company and issue its notes or bonds therefor.

A county is a territorial division, such as a senatorial district for the election of a State senator—a congressional district—a judicial circuit. It is not a corporation or artificial person, hence has not the general powers of a corporation. (15 Johns. 382 ; N. York Fire Ins. Co. v. Ely, 2 Cow. 699 ; Ang. & Ames, § 2 & 256.)

The 4th sec. of plaintiff's charter exhausts its force in re-enacting such clauses of the charter of the Louisiana and Columbia Railroad Company (and such only) as imposed restrictions on that company, or granted to that company rights, privileges or immunities. The 16th sec. of the charter of the Louisiana and Columbia Railroad Company, relied on, does not come within the scope of the 4th sec. of plaintiff's charter.

The first legislative enactment authorizing Marion County to subscribe for stock was the act approved Feb. 23, 1853 ; the 1st. sec. of that act confers power on the county to subscribe for stock in plaintiff's company. The subscription having been made some months previous, is void for want of power. (3 Wend. 485 ; 2 Cow. 709.) The subscription is void because not made by the proper agent. The county court is the agent, and only agent, authorized by law to bind the corporation by making a subscription. (Act of Feb. 23, 1853, § 1; Ang. & Ames on Corp. § 1, p. 256 ; Bealy v. Marine Ins. Co. 2 Johns. 114 ; 26 Wend. 496 ; Ang. & A. § 277 & 279 ; 12 Mass. 248 ; 8 Serg. & R. 521.)

---

* See Moran v. Commissioners of Miami County, 2 Black, (U. S.) 722.

There is no authority of law for issuing the $1,000 stock note No. 28. The county was authorized to issue its bonds by the act of Feb. 23, 1853; but it was not authorized to issue a parol contract, a stock note like this, and it is therefore void and the county is not bound. (3 Wend. 485; Ang. & A. § 231, 252 a. & 291; Head v. Providence Ins. Co. 2 Cranch, 168: N. Y. Fire Ins. Co. v. Ely, 5 Cow. 568; Dawes v. N. Y. Ins. Co., 7 Cow. 465; 8 Gill & J. 318; 3 Wend. 485; Ang. & A. § 231, 252 a. & 291; 11 Humph., Tenn. 20.)

The corporation (i. e. the defendant) may avail itself of the want of authority to make the contract, although it may have received the consideration. (Albert & wife v. Savings Bk. of Baltimore, 1 Md. Ch. Dec. 413; 8 Gill & Johns. 318; Ang. & A. § 256.) The doctrine of estoppel does not apply. (Pa. & Md. Steam Nav. Co. v. Dandridge, 8 Gill & J. 319; Ang. & A. § 256.) The plaintiff was bound to take notice of the limitations on defendant's power to contract; he cannot plead ignorance of the law. (Ang. & A. § 265; Root v. Goddard, 3 McLean, 103.)

II. The act, so far as it seeks to make a previous void act binding, is retrospective, conflicts with the 17th sec. of the 13th art. of the State Constitution and is therefore void.

The doctrine in the case of the Commis'rs of Knox Co., Ind., v. Aspinwall et al. does not conflict with the authorities cited to show this stock note void. (21 How. 54.)

In the case at bar the question is not a question of good faith, but a naked question of power bearing on a law that all persons are bound to know at their peril.

In Flagg et al. v. City of Palmyra, held that the law authorized the corporation to issue the kind of instruments it did issue for the purpose for which they were issued; that *bona fide* holders in such a case will not be held to inquire into all the formal prerequisites to the issuance of the bonds, but will be held to a knowledge of the law. Under the principle thus laid down, had the instrument been a parol contract, and not a bond, the decision would have been for the city.

To hold that a corporation created for a specific purpose, with limited powers, is estopped from inquiring into the extent of its powers, and from defending on the ground that its agents exceeded their authority, would place the corporation at the mercy of its agent; and to hold the agents of a corporation may bind it by their act, in the absence of any power conferred by law, simply by repeated illegal acts by way of ratifying the original act, would be to enable the corporation by the act of its agents to get rid of all restrictions on its powers by acts of usurpation of power in the beginning and subsequent acts of ratification. Such a principle is repugnant to the whole theory of the law in regard to corporations created for a special purpose, and would prove dangerous in practice.

*Carr*, for defendant in error.

Defendant in error contends that the public faith underlies this whole case, and that in times like these when nine-tenths of the commerce and trade of the whole nation is carried on through and by the medium of city, county, state and national securities or obligations, with nothing but plighted public faith to redeem them, that it should be the policy of the courts of the country to so construe those securities and obligations, as to give them the highest standard of commercial paper at home and abroad.

I. Marion County had the power through its county court to subscribe for the one thousand shares of capital stock, and to issue her notes for such subscription. (See §§ 16 & 17 of charter of Louisiana and Columbia R.R. Co., approved January 27, 1837; p. 13, § 4, act February 16, 1847.) Even if there should be doubt as to the power or right of Marion County by its county court to subscribe for the stock of the railroad company prior to February 23, 1853, that power is fully given by the Legislature of the State and subsequent approval of the original subscription by the county court. (See § 6 of "An act to amend an act to incorporate the Hannibal and St. Joseph Railroad Co., Feb. 23, 1853, p. 16.)

The character of the obligation issued by the county in payment of its subscription for the railroad stock was in conformity to the statutes above cited, both in form and legal effect. The fact that the notes when issued were called bonds, cannot change their legal effect, nor can such designation alter the law under which said notes were issued. The acts of estoppel cannot be disregarded by the courts, and public policy and faith and honest dealing require that the county should be concluded thereby. (21 How. 539.)

The county after having issued these securities, accompanied by orders of the county court inviting public confidence, is as much estopped from setting up informality as a defence to the same extent that an individual would be. (23 How. 381; S. C. 24 How. 365, 450.) The county court was authorized to issue these notes in payment of its subscription, and the notes reciting the facts show them to have been regularly issued; the county is thereby estopped to deny their regularity, or to assert that they were not made in conformity to the statute. (2 Black. U. S., S. C. 722; 1 Black, 386; 33 Mo. 440; 1 Wal. S. C. 175.) The ratification by the Legislature, and approval by the county court, made the subscription and notes binding. (8 Gray, 575; 15 Conn. 475; 5 Wheat. 326.)

WAGNER, Judge, delivered the opinion of the court.

This is a suit brought by the Hannibal and St. Joseph Railroad Company against Marion County, on a warrant for sixty dollars, being the amount of one year's interest which had accrued on a note given by said county to said company in payment of subscription on stock.

By section four of said company's charter, which was approved February 16, 1847, it is enacted: "The said company shall have power to view, lay out, and construct a railroad from St. Joseph in Buchanan county, to Palmyra in Marion county, and thence to Hannibal in said county of Marion, and shall in all things be subjected to the same restrictions and entitled to all the privileges, rights and immunities,

which were granted to the Louisiana and Columbia Railroad Company by an act entitled "An act to incorporate the Louisiana and Columbia Railroad Company," passed at the session of the General Assembly in 1836 and 1837, and approved January 27, 1837, so far as the same are applicable to the company hereby created as fully and completely as if the same were herein re-enacted." By the charter of the Louisiana and Columbia Railroad Company above referred to, it is provided:

" § 16. It shall be lawful for the county courts of the respective counties on said road to subscribe for such portions of the stock of said company as they may deem proper, and upon such terms as they may agree with the company. When any county shall have subscribed for any portion of the stock, the justices of the county court may issue the notes of the county for such subscription, which shall be signed by all the justices, and attested by the clerk, and shall be payable in such times and places as may be agreed upon; *provided*, said notes shall not in any event bear a greater rate of interest than seven per cent. per annum: all proceedings in relation thereto shall be entered on the records of the court.

" § 17. When any stock shall have been subscribed for by the county, the justices shall have a right to vote on behalf of the county at any election, and they may at any time require of the directors information concerning the affairs of the company."

On the 4th day of February, 1852, whilst the county court of Marion county was in session, the directors of the said railroad company, by their agent, moved the court to subscribe one thousand shares, of one hundred dollars each, of stock to said company; which proposition was assented to by said court by an order entered of record, and certain persons designated by the court to draw up the form for the notes or bonds to be issued by the county in payment of the shares of stock. And at a subsequent term of the said county

court, the following proceedings were had, as appears by the record :

" Whereas, it appears to the satisfaction of the court that an order made on the 4th day of February last, in regard to the county subscribing one thousand shares to the Hannibal and St. Joseph railroad, has never been carried into effect in consequence of the court failing to appoint an agent to subscribe the same, it is therefore ordered that John Rice, Esq., the president of this court, be and he is hereby appointed the agent of this court to subscribe for said stock according to the order before referred to."

In pursuance of this authority, Rice, the agent, proceeded to subscribe the one thousand shares of stock, in behalf of said county, and received certificates to that effect from the said railroad company. The court from time to time issued stock notes, in instalments to meet the various calls made by the company, all of which notes were due and payable twenty years after date, bearing interest from date at the rate of six per cent. per annum. The county court was regularly represented through an agent or agents duly appointed for that purpose, in all the meetings of the stockholders of said company, and continued to pay the annual interest accruing on the stock notes till the year 1860, when they made an order forbidding the county collector and treasurer to receive or pay the same. Before this, however, they had made an order proposing to call in the first of the original notes that were issued, and issue others in their stead, with coupon interest warrants attached, post-dated and falling due annually. This proposition, it seems, was accepted on the part of the holder of the notes, the railroad company. The following is a copy of the note, and the interest warrant arising thereon, on which the suit is brought:

" Marion County, Missouri.—$1,000.—No. 28. Stock Note of Marion County.—To the Hannibal and St. Joseph Railroad Company : Twenty years after date, Marion County promises to pay to . . . . . . the Hannibal and St. Joseph

Railroad Company  . . . .  a corporation created by an act of the General Assembly of the State of Missouri, entitled "An act to incorporate the Hannibal and St. Joseph Railroad Company," approved February 16, 1847, or order, at Palmyra, Missouri, . . . . . the sum of one thousand dollars, for value received, with interest thereon, from and after the 15th day of September, A. D. 1855, at the rate of six per cent. per annum, payable annually thereafter at the said treasury. This being given by said county, and accepted by said company, in payment of so much of the stock in said railroad taken and subscribed by said county under the said act of the General Assembly.   By order of the County Court of the said county of Marion, Palmyra, 15th September, 1855. Andrew Brown, A. D. Sprague, Thomas McMurry, Justices of Marion County Court.   Attest: Thomas E. Hatcher, clerk of Marion County Court."

"$60.00.—Palmyra, Marion county, September 15, 1860. Treasurer of the County of Marion: Pay to bearer sixty dollars, being interest due on the 15th day of September, 1860, on the bond of the County of Marion, No. 28, to the Hannibal and St. Joseph Railroad Company, issued in pursuance of an order of the County Court of said county, September 15, 1855.   A. D. Sprague, President of Marion County Court.   Countersigned: Thos. E. Hatcher, clerk."

In the amended charter of the Hannibal and St. Joseph Railroad Company, approved February 23, 1853, by section six it is declared, that, " in all cases where subscriptions of stock have heretofore been made by the county courts of any counties, the common council of any incorporated city, or the trustees of any incorporated town, such subscription shall be held valid and binding upon such counties, cities or town, if approved of hereafter by the said county courts, common council, or board of trustees, as the case may be."

On the 20th day of September, 1853, after the passage of the above act, the county court of Marion County made the following order: " It is ordered by the court that the pro-

20—VOL. XXXVI.

ceedings of this court on the 4th day of February, 1852, and on the 4th day of October, 1852, authorizing the subscribing of one thousand shares of stock to the Hannibal and St. Joseph Railroad, by their agent, for and on behalf of Marion County, be, and the same are hereby approved under the provisions of an act of the Legislature of the State of Missouri, approved February 23, 1853."

We have thus copied all the material facts in this case which are deemed necessary to its complete understanding. On the trial, the several orders of the county court touching and concerning the premises, as well as some oral evidence, were introduced for the plaintiff, to the receiving of which the defendant objected; but as the objections were all general, without specifying any reasons, they will not be noticed. When the plaintiff closed the testimony on its part, the defendant asked the court to give the instructions or declarations of law which are here transcribed:

1. That the county court of Marion county is the agent, and only agent, authorized by law to subscribe for stock on behalf of the county.

2. That the subscription made on behalf of the county by John Rice, is not binding on the defendant.

3. That the only instruments that the law authorizes the county court to issue in payment for stock are the *bonds* of the county; and the instrument read in evidence is not a a bond, and is therefore not binding on the county.

4. That the county court is the only agent authorized by law to issue instruments in payment of subscriptions for stock, and the instrument read in evidence not having been issued by the county court, but by A. D. Sprague, Thomas McMurray, and Anderson Brown, justices, is not binding on the defendant.

5. That the act of February 23, 1853, so far as it operates to make the prior subscription binding on the defendant, is retrospective, and therefore unconstitutional and void.

6. That the law having pointed out the agent to make the contract on the part of the corporation, and prescribed the

mode in which it should be made, a contract made by any other agent, or in any other mode, is not binding on the corporation.

7. That the act of the county court in appointing agents to cast the vote of the county in the election of directors, and in authorizing warrants to issue in payment of interest, and appointing agents to sell stock, does not estop defendant from denying the validity of the instrument sued on, or of the subscription of the stock.

The court refused to give all of the above instructions, to which decision of the court the defendant excepted, and after moving for a new trial and in arrest of judgment, both of which motions were overruled, the case is brought here by writ of error.

The first objection urged against the legality of the action of the county court in making the subscription is, that the county court is a body of special and limited jurisdiction, and that they possessed no power to delegate authority to John Rice, their president, to act in their stead; that they, as a court, must make the subscription, else it is totally void. It will not be denied, but that corporations must act strictly within the scope of the powers conferred on them by the act calling them into being; and where a grant of power from the Legislature is relied on, the mode prescribed in that grant for doing any particular thing must be pursued according to the law creating it. A county is a political division, and denominated a *quasi* corporation; it assumes on itself some of the duties of the State, in a partial or detached form, and is to be considered in the light of an auxiliary of the government, and as a secondary and deputy trustee of the people. (McKim v. Odom, 3 Bland, ch. 417.) The county court is instituted by law with certain specific powers and jurisdictions in relation to probate and testamentary matters, the appointment of guardians, &c., and also has the control and management of the property, real and personal, of the county. It is the agent of the county, and has full power, and may lawfully and of right do whatever

is necessary to carry out and execute the trusts reposed in it. A grant from the Legislature investing the county court with power to do certain acts, necessarily implies the power to use the fit and appropriate instruments to accomplish the objects sought to be attained. When the Legislature empowered the county court to subscribe stock to the railroad company, it also clothed it with the means which might be convenient for making its action effectual. The substantive act was taking the stock; that was evident by the order of record made by the court; and the appointment of an agent to make the entry on the company's books, and receive the certificates, was a proper and convenient way for carrying out the details. The agent did not make the contract; it was made by the county court, and he was a mere instrument to execute an order.

By the fourth section of the original charter of the railroad company, it is provided that it in all things shall be subjected to the same restrictions, and entitled to all the privileges, rights and immunities, which were granted to the Louisiana and Columbia Railroad Company, so far as the same are applicable to the company hereby created, as fully and completely as if the same were herein re-enacted; and by the sixteenth section of the Louisiana and Columbia railroad charter the county courts were authorized to issue the notes of the county for subscription, signed by the justices and attested by the clerk. It was under this section that the court proceeded when the stock was first taken and the notes issued. The Legislature gives the company all the rights, privileges and immunities contained therein, the same as if it had been re-enacted. The language seems broad enough, by reasonable construction, to fully sustain the acts of the county court.

But if any doubts were entertained of their validity, by the sixth section of the amended charter it is enacted that "such subscription shall be held valid and binding upon such counties," &c., "if approved of hereafter by the said county court." Now, as we have heretofore seen, the county

court did, after the passage of this act, approve of the subscription, and ratify it so far as they had power by virtue of and in accordance with said act.

But it is contended that the act is afflicted with a constitutional infirmity, and that it is necessarily inoperative as a confirmatory act, because, if the proceedings of the court and its agents were void, previous to the passage of the act, by want of authority, they could not be rendered effectual for any purpose by means of legislation. Although individuals may not have the power to make good *ab initio* that which was originally void by subsequent deed or acts of confirmation, yet that principle has but a slight, if any, application to the case. The act of the Legislature does not purport to confirm, ratify and make unqualifiedly valid the proceedings of the county court by its own terms; it does not act *ex proprio vigore*, but delegates authority to those who had prior to that time subscribed for stock to approve of and confirm the same. It left the matter entirely optional with the county court, as the representative and agent of the county, to accept or reject the proffered remedy. They elected to ratify and affirm the subscription, and by that act they gave just the same effect to the contract to subscribe the stock, and to all the proceedings had by the county court in reference to it, as if they had had full authority in the first instance. Nor has the county any just cause of complaint from this conclusion, as it is obvious that the contract was entered into in good faith, and with the firm belief that ample power for the act existed; and the only effect of the legislative act, and the approval by the court, was to execute and fully carry out precisely what was intended, but which they found was not accomplished by a defect in their authority. The notes were made by the justices in a public capacity and in the line of their official duty; the contract enured to the benefit of the county, and the county was bound by the obligation thereby created. (Hodgson v. Dexter, 1 Cranch, 345; Tutt v. Hobbs, 17 Mo. 486.

Upon a full view of the case, it appears that both parties

acted with honesty and good faith; the county made the subscription to plaintiff's railroad, and received certificates of stock for said subscription like all other shareholders; that for nine years it had been regularly represented at the meetings of the stockholders and of the board of directors, and that during that period of time the interest accruing on the stock notes has been regularly and punctually paid. It appears also that many of these stock notes or obligations have passed into the hands of *bona fide* endorsees and innocent purchasers; their rights ought not to be impaired without good and substantial reasons.

In Bissel v. The City of Jeffersonville (24 Howard), a case resembling this in almost every particular, the Supreme Court of the United States says: " When the contract has been ratified and affirmed, and the bonds issued and delivered to the railroad company in exchange for stock, it was then *too late to call in question the facts determined by the common council*." The Supreme Court of Ohio has also recognized the duty and binding obligation of corporate bodies to be vigilant in exposing illegalities or abuses in the employment of their powers, and have denied assistance where they have waited till the evil has been done, and the interest of innocent parties has become involved. (Chapman v. Mad River R.R. Co., 6 Ohio, 119; The State v. Van Horne, 7 *id.* 327.)

The remarks of Lord St. Leonard (Sir Edward Sugden) in the House of Lords, in reference to the effect of conduct of a board of directors as determining the liability of a corporation, are applicable to the county court of Marion county under the circumstances and facts in this case. " It does appear to me," he observed, " that if, by a course of action, the directors of a company neglect precautions which they ought to attend to, and thereby lead third persons to deal together as upon real transactions, and embark money or credit in a concern of this sort, these directors cannot, after five or six years have elapsed, turn around, and *themselves* raise the objections that they have not taken these

precautions, and that the shareholders ought to have inquired and ascertained the matter. The way, therefore, in which I propose to put it to your lordships, in point of law, is this: the question is not whether that irregularity can be considered as unimportant, or as being different in equity from what it is in law; but the question simply is, whether by that continued course of dealing, the directors have not bound themselves to such an extent that they cannot be heard in a court of justice, to set up, with a view to defeat the rights of the parties with whom they have been dealing, that particular clause enjoining them to an act which they themselves have neglected to do." (Borgate v. Shortridge, 5 H. L. Cas. 297.)

The rules which regulate the business transactions of life, and which enjoin good faith, honesty and fair dealing, are alike applicable to individuals and corporations. The County of Marion, to aid a great public undertaking, which was to redound to the interests of its citizens, subscribed stock in a railroad enterprise; like all other shareholders, it received a certificate of stock, and now retains and holds the same, and continues to enjoy all the benefits derivable therefrom. Upon the strength of that subscription large sums have been expended, and important investments made. It would be grossly immoral and unjust to allow it to involve others in onerous engagements, and then, after lapse of ten years' silent acquiescence, repudiate its obligation.

The defence is purely technical and devoid of merit; the judgment is for the right party, and is affirmed. The other judges concur.