### IN

# THE SUPREME COURT

### OF

## THE STATE OF MISSOURI,

### JANUARY TERM, 1871, AT JEFFERSON CITY.

---

BARTON COUNTY, Respondent, *v.* G. H. WALSER, Appellant.

1. *Lands — Swamp lands — Sale of by County Court, act of 1868 to validate, not unconstitutional.*— Certain swamp lands were sold by the County Court of Barton county. The court had full jurisdiction in the premises, but the sales were attended with informalities and irregularities. *Held,* that the act of March 26, 1868, validating the titles to those lands, was not unconstitutional as being retrospective in its operation.

As between individuals, the Legislature can not validate void deeds. But counties are not individuals. They are political divisions of the State; their functions are of a public nature; they hold their property in subordination and under the control of the Legislature.

The law distinguishes between sales by County Courts which are without authority and absolutely void *ab initio*, and those which are made by authority of law, but are informal and irregular.

*Appeal from Third District Court.*

*T. T. Gantt,* for appellant.

The relation of the State to the swamp lands, in the first instance, under the grant of them by Congress of September 28, 1850, was that of absolute proprietor. As long as the lands were held by any county of the State they remained subject to disposition by the State. A county is not an independent individual

person having rights of property with which the State can not meddle, but is a mere local agency employed by the State for the purpose of municipal government, and liable to have its very existence determined and ended if the State shall so decide. (Conner v. Bent, 1 Mo. 235; Hamilton v. St. Louis County Court, 15 Mo. 3 *et seq.;* People v. Power, 25 Ill. 190 ; East Hartford v. Hartford Bridge Co., 10 How. 533.)

If the State retained the power of disposing of these lands, which was true unless the respective counties had disposed of them to individuals, the act of March 26, 1868, operated as such a disposition in favor of the persons named in the deeds or patents made or issued by the counties in favor of the purchasers of swamp lands. It operated as such a disposition·from March 26, 1868, only. No retrospective effect is claimed for *it;* no rights can be defeated by it. The obligation of no contract can be impaired by it. All that it can do, and all that it claims to do, is to confirm by law, to the purchasers named in the conveyances made for swamp lands by the several counties, the title to the lands described in such deeds, such confirmation taking effect as of that day (March 26, 1868) and having the same efficacy as if patents had been then issued by the governor of the State to the purchaser, according to section 4 of the act of March 3, 1851. (Strother v. Lucas, 12 Pet. 410 *et seq.*)

Counties occupy a relation toward the State quite different from that which any private, independently existent person can occupy. From the nature of its constitution, the State has, and can not divest itself of, complete control over them and their property (so called). It can no more divest itself of this than it can abdicate any other part of its sovereignty. But whenever the State, either directly or by any of its agencies or instrumentalities, enters into contracts or engagements with an individual capable of having a beneficial interest in any subject-matter, then the State is as much bound in morals to fulfill its engagement as an individual would be ; and so far as the action of the State in derogation of such contract or engagement is inhibited, either by the constitution of the United States or of the State, such action is a nullity.

*G. H. Walser, pro se.*

*John S. Phelps,* attorney of J. M. Richardson; and *T. A. Sherwood,* attorney for heirs of W. M. Chenault and W. F. Cloud.

I. The deeds recited in the agreed statement of facts were sufficient, although somewhat informal, and passed the title of the county. (Jamison v. Fopiana, 43 Mo. 565, and cases cited.)

II. If defects in substance as well as in form existed either in the deeds or in their acknowledgments, they were cured by the act of March 26, 1868 (Sess. Acts 1868, p. 67), and that act is not unconstitutional. A county is part and parcel of the State, "but an agency of the State government," and "can have no property which may not be taken away by the effect of legislation." (State v. St. Louis County, 34 Mo. 546; Cooley on Const. Lim. 240.) The curative act of 1868 may well be regarded not as one "legalizing as against the State the unauthorized or invalid acts of any officer," but as an act prohibiting that agent from asserting title to lands which had been by that agent previously granted away; or the act may be regarded as a legislative grant. (See authorities cited below.)

*J. P. Ellis* and *J. F. Hardin,* for respondent.

I. The title to said land was fully vested in Barton county by legislative grants. (Sess. Acts 1857, p. 32; Strother v. Lucas, 12 Pet. 411; Field v. Seabury, 19 How. 323–33; Rice v. R.R. Co., 1 Black, 358; Lessieur v. Price, 12 How. 59; Flecker v. Peck, 6 Cranch, 128; Ashley v. Cramer, 7 Mo. 98; Harold v. Simmons *et al.,* 9 Mo. 323; 37 Mo. 338; 45 Mo. 443; Griffing v. Gibbs, 1 McAl. 212; Grignon v. Astor, 2 How. 319; Dunklin County v. Dunklin County Court, 23 Mo. 449; Enfield v. Way, 11 N. H. 520; Enfield v. Permit, 5 N. H. 280; Wilcox v. Jackson, 13 Pet. 498.)

II. The deeds from J. N. Bruffy to J. M. Richardson, dated November 12, 1858, and May 26, 1859, were void and properly so declared by the court; and so were the deeds by Mathews and Timmonds, as county justices, dated December 3, 1859, and

February 6, 1861. All of these deeds show on their faces that the laws were not complied with, and that they were executed without authority. The doctrine is well settled that a public officer must act in strict compliance with the act creating the power he assumes to execute. (Sess. Acts 1857, pp. 49–50; R. C. 1855, p. 1006, § 4; Sess. Acts 1859, p. 358.) There never was any authority for a commissioner to make a deed to any of these lands, and county justices could only make deeds to lands sold in a particular manner. None of the legislative acts were observed in these cases. (Shawnee County v. Carter, 2 Kan. 117; State v. Bank of the State of Missouri, 45 Mo. 528; Walcott v. Lawrence County, 26 Mo. 272; Delafield v. Illinois, 26 Wend. 192; Delafield v. Illinois, 2 Hill, 159; Brady v. New York City, 20 N. Y. 312; Floyd's Acceptances, 7 Wall. 666; Dwarris' Stat. 670; Sedgw. Stat. Law, 292 *et seq.*, 351–8; 22 Pick. 385; Comyn's Dig., tit. Attorneys, *c*, 11, 14, 15; Sto. Agency, §§ 165, 307 *a*; North River Bank v. Aymar, 3 Hill, 262; Warendorff v. Whittaker, 1 Mo. 205; Tate v. Evans, 7 Mo. 419; Lee v. Monroe, 7 Cranch, 366; Gains' Case, 6 Wall. 711–12; Curtis v. United States, 2 N. & H. Court Claims, 144; Baltimore v. Reynolds, 2 Md. 1; State v. Hastings, 10 Wis. 518; Hall v. Marshall County, 12 Iowa, 142; Pierce v. United States, N. & H. Court Claims, 270; People v. Phœnix Bank, 24 Wend. 431.) The agency being special, not coupled with any interest in the officer, everything done is void, unless in strict conformity with the authority. (Allen v. Ogden, 1 Wash. C. C. 174; Stephens v. United States, 2 N. & H. Court Claims, 95; Davis v. Robb, 2 Cr. C. C. 458; Pierce v. United States, 2 N. & H. Court Claims, 599; 5 Wheat. 326; Barger v. Miller, 4 Wash. C. C. 280; Holbrook v. F. & A. T. Co., 3 Cr. C. C. 425; United States v. Halberstadt, Gilp. 262; Johnson v. United States, 5 Mason, 425; United States v. Michal, 1 Penn. 646; Seabury v. Field, 1 McA. 1; Friedman v. Goodwin, *id.* 142.) The county being a corporation, could do no act except as authorized by law. (Head v. Prov. Ins. Co., 2 Cr. 127; Russell v. Topping, 5 McL. 194; Dartmouth College v. Woodward, 4 Wheat. 636; Beatty v. Knowles, 4 Pet. 152; 1 U. S. 141; Perriene

v. Ch. & D. Canal Co., 9 How. 172 ; Humphreyville Copper Co. v. Sterling, 1 West. Law Mag. 126 ; Farnham v. Black Canal Co., 1 Sum. 46 ; Bank of Augusta v. Earle, 30 Pet. 519 ; Runion v. Foster, 14 Pet. 122 ; Tombigbee R.R. Co. v. Kneeland, 4 Hawl. 16 ; City Bank v. Beach, 1 Bl. C. C. 425 ; Mygatt v. City of Green Bay, 8 Am. Law Reg. 271 ; Cincinnati v. Morgan, 3 Wall. 275; Clark v. City of Washington, 12 Wheat. 40 ; 2 Cr. C. C. 502 ; Owing v. Hall, 9 Pet. 608 ; Williams v. Peyton, 4 Wheat. 77 ; 2 Cal. 524 ; 12 Ill. 140 ; 3 Conn. 171 ; 14 Conn. 123 ; 3 Comst. 129 ; 15 N. Y. 341 ; 13 Ind. 245 ; 16 Ind. 227 ; 7 Ind. 77 ; 4 Ind. 15, 157, 462 ; 8 Blackf. 132, 162 ; 4 Blackf. 15 ; 7 Blackf. 12 ; 1 Blackf. 336 ; 4 Blackf. 454 ; 3 Blackf. 295 ; 6 Blackf. 91 ; 4 Blackf. 476 ; 5 Blackf. 325 ; 4 Blackf. 241 ; 3 Blackf. 158 ; 2 Ind. 262 ; 10 Ind. 358 ; 2 Ind. 53 ; 3 Ind. 447 ; 8 Ind. 132 ; 2 Ind. 327 ; 6 Ind. 542 ; 3 McL. 102.) Counsel here reviewed the specific points of objection to the several deeds offered by defendant.

III. The act of the 26th of March, 1868, is wholly retrospective and void. (Routsong v. Wolf, 35 Mo. 174 ; Const. Mo. 1865, art. i, § 26 ; State, to use, etc., v. Fry *et al.*, 4 Mo. 120 ; State v. Sloss, 25 Mo. 291 ; 7 Humph. 152 ; Jones' Heirs v. Perry *et al.*, 10 Yerg. 59 ; Officer v. Young, 5 Yerg. 320 ; Van Zandt v. Waddell, 2 Yerg. 260, 559-60 ; Tate's Ex'r v. Bell, 4 Yerg. 202 ; Rice v. Parkham, 16 Mass. 326 ; Holden v. James, 11 Mass. 396 ; 5 Pick. 65 ; 3 Greenl. 326 ; 4 Greenl. 140 ; 1 Ark. 121, 315 ; 4 Ind. 301 ; 1 Gill. & Johns. 163 ; 3 Scam. 238, 465 ; 12 Ala. 369 ; 4 N. H. 572 ; 13 La. 176 ; Sedgw. Const. Law, 167-172 ; 31 Mo. 205 ; 33 Mo. 287 ; 38 Mo. 483 ; 44 Mo. 570 ; 41 Mo. 39.) The subsequent approval by the court of the sale by McFarland could not assist the validity of the sale. (Gaines' Case, 6 Wall. 714 ; Hope Ins. Co. v. Flynn, 38 Mo. 483 ; State, to use of Fry *et al.*, 4 Mo. 120 ; State v. Sloss, *supra ;* 7 Humph. 152 ; De Cordova v. City of Galveston, 4 Texas, 471.) Our constitution differs materially from nearly every other State constitution in forbidding all retrospective legislation. The act of 1868, declaring these deeds valid, is an invasion of the functions of the judiciary,

13—VOL. XLVII.

and hence void. (Jones' Heirs v. Perry *et al.*, *supra;* Officer v. Young, *supra;* Van Zandt v. Waddell, *supra;* Tate's Ex'r v. Bell, *supra.*)

The act still further deprives the county of vested rights in this : that it undertakes to make that valid which was void. (Commissioners of Shannon County v. Carter, 2 Kan. 115.) This is a parallel case to the one at bar. (Watson v. Werner, 8 Pet. 108 ; Hope Ins. Co. v. Flynn, 38 Mo. 483.) The county was a corporation, hence a "person" within the meaning of that provision of the constitution of the United States which declares that no person "shall be deprived of property without due process of law."

WAGNER, Judge, delivered the opinion of the court.

This was an action of ejectment brought in the Barton County Circuit Court to recover the possession of certain real estate which had been donated to the county as swamp lands.

The case was tried on an agreed statement of facts by the court sitting as a jury, and judgment was rendered in both the courts below for the respondent. The defendant admitted that he was in possession of the lands, but did not claim a title in fee. He set up, as a defense against the plaintiff's right of recovery, an outstanding title in another person, and, to support this defense, gave in evidence four several deeds, which purported to convey all the lands in controversy to John M. Richardson. These deeds recited as follows :

1. That on the 12th day of November, 1858, a deed was made between Jason N. Bruffy, as commissioner for and in behalf of Barton County, party of the first part, and John M. Richardson, of the second part, stating that the County Court of Barton county, on the 21st of December, 1857, granted to John M. Richardson the right to purchase certain swamp lands therein described at and for the price of seventy-five cents per acre, and that Wm. D. McFarland, as swamp-land commissioner for said county, did, on the 21st of December, 1857, sell the said real estate to the said Richardson, and that the said Richardson had paid the full price therefor, which sale was, by the County

Court of Barton County, approved on the 4th of March, 1858, and that said court ordered Jason N. Bruffy, commissioner appointed by said court, to convey by deed, for and in behalf of said county, the said real estate to said Richardson; and thereupon, in consideration of the premises, the said commissioner did remise, release and convey to the said Richardson and his heirs all the right, title, interest and estate which Barton county had to the said real estate, which deed was duly executed by Bruffy, commissioner of Barton county, acknowledged and filed for record May 25, 1859.

2. That on the 26th day of May, 1859, said Bruffy, as commissioner for Barton county, made another deed to said Richardson, conveying certain other lands therein described. The form and recitals of this deed were the same as in the previous one, except that it recited the payment of the price by Richardson to the treasurer of Barton county, an order by the Barton County Court at the February term, 1858, to Bruffy, to convey the lands to Richardson. The deed was also duly acknowledged and recorded May 26, 1859.

3. That on December 3, 1859, Philip Mathews, presiding justice of the County Court of Barton county, executed a deed, countersigned by the clerk of said court and attested by its seal, purporting to convey to John M. Richardson another tract of land, acknowledging the receipt of the purchase money by Barton county. This deed conveyed to Richardson, to his own proper use and behoof, the premises, together with all the rights, title and interest of which the said Barton county was seized. It was acknowledged before the clerk of the Barton County Court.

4. That on February 6, 1861, a deed was made by the presiding justice of the Barton County Court to John M. Richardson, reciting that, whereas, Wm. D. McFarland, as swamp-land commissioner of the county of Barton, did, on the 19th of December, 1857, in obedience to an order of the County Court of Barton county, sell certain swamp lands to Wm. M. Chenault (describing them); and whereas, the County Court of Barton county, on the 5th day of February, 1861, made an order reciting the payment of the full amount of the purchase money and interest for said

lands; and whereas, John M. Richardson and others were partners of Chenault in the purchase of the same; and whereas, the legal representatives of Chenault, deceased, had made partition thereof with the other partners, and had set off the lands described in the order to John M. Richardson, therefore it was ordered by the County Court of Barton county that the clerk of said court execute a deed therefor to John M. Richardson, said deed to be signed by the president of the court, countersigned by the clerk, and attested by the seal of the County Court. This deed states: ·'Now, therefore," the presiding justice did, in obedience to the foregoing order, "grant, bargain, sell and convey, remise, release and transfer" "all the right, title, claim and interest" of the said Barton county in said lands to the said John M. Richardson. This deed was also duly acknowledged and recorded.

It was admitted that all the lands embraced in plaintiff's petition were part of the swamp lands in Barton county, duly selected and approved as such swamp lands, under and by virtue of an act of Congress approved September 28, 1850; that prior to November 4, 1857, these lands had been patented by the United States to the State of Missouri; and that the governor of the State caused the County Court of Barton county to be legally advised of such selection and patents, and furnished plats of the land to said court; that all of the lands described in plaintiff's petition were duly selected as swamp land prior to November 4, 1857, and were included within the operation of an act of the Legislature, approved on that date, amendatory of an act approved December 10, 1855. The land was not sold by virtue of any order of the Barton County Court directing the sheriff to expose it for sale, nor did the sheriff advertise or sell it in any way. The court, at the prayer of the plaintiff, gave the following declarations of law:

1. That the act of the General Assembly of the State of Missouri, entitled "an act amendatory of an act donating swamp and overflowed lands in the counties in which they lie," approved December 13, 1855, approved November 4, 1857, vested a fee-simple title in plaintiff of the land sued for.

2. That the deed given in evidence by defendant, executed

November 12, 1858, by Jason N. Bruffy to John M. Richardson, is void, and furnishes no evidence of an outstanding title to said Richardson to the lands therein described.

3. That the deed given in evidence by the defendant, executed May 26, 1859, by Jason N. Bruffy to John M. Richardson, is void, and furnishes no evidence of an outstanding title in said Richardson to the lands therein described.

4. That the deed given in evidence by the defendant, executed by Philip Mathews to John M. Richardson, on December 3, 1859, is void, and furnishes no evidence of an outstanding title in said Richardson to the lands therein described.

5. That the deed given in evidence by defendant, executed on the 6th day of February, 1861, by Lander M. Timmonds and Branch T. Morgan to John M. Richardson, is void, and furnishes no evidence of an outstanding title in said Richardson to the land therein described.

6. That the act of the General Assembly, entitled "an act to perfect the title to lands known as swamp lands," approved March 21, 1868, is, as to its operation and effect on the several deeds given in evidence by the defendant, unconstitutional and void. To these declarations the defendant at the time excepted.

It will be perceived by the instructions that the ruling of the court was that the deeds of conveyance to Richardson were absolutely void, and that the act of 1868, purporting to confirm and render them valid, was unconstitutional and inoperative.

As this controversy springs out of an attempted disposition of the swamp and overflowed lands granted by the United States to this State, it will be necessary briefly to recur to the State legislation upon that subject.

By an act approved March 3, 1851 (Sess. Acts 1851, p. 238), the Legislature donated the lands in question to the counties in which they were situated, the proceeds of which were to be paid into the county treasury and to become a part of the county school fund. The second section of the act provided the means and manner for reclaiming the lands, and the third section invested the County Courts, whenever in their judgment it should be for the interest of the counties to do so, with power to order the sheriff

to sell the same in such quantities, at such times and places, and on such terms as they might think proper. And the fourth section enacted that when full payment should be made for any of the lands by the purchaser thereof, the County Court should cause the fact to be certified to the governor, who should thereupon grant to the purchaser, his heirs or assigns, a patent for the same, etc.

By an act approved February 28, 1855, it was enacted that " the several County Courts of this State are hereby authorized to sell and dispose of the swamp and overflowed lands within their respective counties, either with or without draining and reclaiming the same, as in their discretion they may think most conducive to the interest of said counties." (Sess. Acts 1855, p. 160.) Under the act approved February 9, 1857 (Sess. Acts 1856–7, p. 50), it was provided that the County Courts of Barton and Jasper counties should each appoint for their respective counties some suitable person as swamp-land commissioner, who should give bond to the county in which he was appointed, which bond should be approved by the County Court. It was the duty of the commissioner, within ten days after the order of the court of his county, to set up one notice in each township in his county, stating the time and place of sale, the notice to be thirty days prior to the day of sale ; and the commissioner was then to sell the swamp and overflowed lands in the manner prescribed by the county. When full payment was made for any of the lands, then it was the duty of the commissioner to report the same to the County Court, and the court was to certify the fact to the governor. All acts inconsistent with this act were repealed so far as they related to Barton and Jasper counties.

Another act on the subject provides that all lands in this State selected under and by virtue of the act of Congress approved September 28, 1850, entitled " an act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits, and which have been or may hereafter be patented to the State," be and the same are hereby declared to vest in full title and belong to the counties in which they may lie. (Adj. Sess. Acts 1855, p. 32.)

By the act approved March, 1859, it was provided that all

swamp lands in Barton and Jasper counties, upon which certifi-
cates of purchase had not been issued, or that had been sold or
pre-empted and had afterward been forfeited, or might thereafter
be forfeited, should be sold as provided for in the next succeeding
section, which is as follows: "Section 3. The County Court
shall make an order, a copy of which shall be given to the sheriff
of the county, directing him to expose to sale such lands ; and he
shall be governed in advertising, selling, and in all other respects
not inconsistent with this act, by the general law regulating the
sale, of the sixteenth section." The act further declares that no
deed shall be made for any of the lands aforesaid until the pur-
chase money is paid; and upon full payment being made, the
County Court shall order the county clerk to execute a deed for
the lands sold, which deed shall be signed by the president of said
court and countersigned by said clerk and attested by the seal of
the county. (Sess. Acts 1858–9, p. 358.)

In 1868 the Legislature passed an act entitled " an act to per-
fect the title to lands known as swamp lands." It consists of a
single section, and provides that all deeds or patents granted or
made by the County Courts of the State in which any of the lands
known as swamp or overflowed lands may lie, shall be deemed
and held to be valid and legal, whether issued by the County
Court or a commissioner appointed by the said court for that pur-
pose ; and such deed or patent shall vest in the purchaser of any
such lands all right, title or interest of said counties in said lands
as fully as if said patents or deeds had been granted by the gov-
ernor of the State and countersigned by the secretary of State, as
is now provided by the General Statutes ; and the funds arising
from such sale shall constitute a part of the school fund of the
respective counties, as is now provided by law. (Sess. Acts
1868, p. 67.)

The above constitutes all the material legislation affecting the
matter now pending. It will be seen that, in the manner of
making the sales and executing the conveyances, the laws pre-
scribing the mode and form were not strictly complied with, and
that the proceedings were attended with irregularities. The first
inquiry is as to the nature and character of the title vested in

the counties by the respective acts. If the land belonged absolutely to the county, then it is contended that it was entirely competent for the County Court to dispose of it through the appointment of a commissioner under the laws in force at that time. (R. C. 1855, p. 502, § 2.) As to the deeds executed by the presiding justice of the County Court, it is certain that the precedent steps preliminary to such execution by the justice, prescribed by the law, were not conformed to. The matter of form, execution, and acknowledgment were good enough. The act made it the duty of the clerk to execute the deed, and then declared that it should be signed by the president of the court and countersigned by the clerk, with an attestation of the seal of the county. Although the meaning of the section is somewhat obscure, it seems that it was intended that the clerk should prepare the deed, and the president should sign it as the agent for the county, and then it should be countersigned by the clerk with his seal annexed.

In Dunklin County v. The District Court, 23 Mo. 449, it was held that Dunklin county had the power to use the swamp lands for other purposes than those designated in the grant, and might therefore appropriate them in payment of a railroad subscription. It was said that the trust reposed in granting the swamp lands to the State was a personal trust, resting in the public faith of the State, and not a property trust fastened by the terms of the grant upon the property itself. But when the State donated the lands to the respective counties, did it surrender all legislative control over the matter? and was it incapable of any further legislative interference? The answer to this brings up the validity of the act of 1868, purporting to perfect the titles of the purchasers of swamp lands, and this is really the important question in the case. It is insisted that the law is retrospective, and therefore void, and the courts below so decided. Our constitution directly prohibits the Legislature from passing retrospective laws, and if this act is of that character it can not be sustained.

A statute which takes away any vested right acquired under existing laws, or creates a new obligation, or imposes a new

duty, or attaches a new disability, in respect to transactions already past, is retrospective. (Hope Mutual Ins. Co. v. Flynn, 38 Mo. 483.) As between individuals, the Legislature has no power to interfere and declare an act or deed valid which was previously void. Therefore, when the Legislature undertook by an enactment to declare a deed legal and binding which was made by an insane person, it was decided by this court that the act was unconstitutional and of no effect. (Routsong v. Wolf, 35 Mo. 174.)

But in examining this question we must ascertain what relation exists between the State and the county, and what are their several rights and powers. If the county is to be treated as a person, possessing individuality, and the grant or donation conveyed to it a title in fee, then the confirmatory act passed by the Legislature must be held invalid. But when the grant was made, certain powers were given to the County Court in relation to its disposal. The court was the agent or instrument through which the disposition was to be made. It is certain that the court did not act independently of the sovereign authority of the State. In Reardon v. St. Louis County, 36 Mo. 555, we said: "The powers of the County Court, and what precise relation it bears to the county, we are to ascertain from the numerous acts which have been passed from time to time by the Legislature, conferring jurisdiction upon it. It is nowhere declared that the County Court is the general agent or representative of the county. It is a part of the State government, with specific powers, duties and functions; generally local to the county, it is true, but derived from the State, and not from the county, and subject to be altered or changed at the will of the Legislature, without regard to the will of the county. It acts independently of the county in obedience to State laws. Duties imposed upon the County Court by the Legislature, it performs as acts of obedience to the Legislature directly as a State functionary, and not as an agent of the county. It is true, it can bind the county in some contracts, subject it to some legal obligations, and appropriate its money to certain objects, but these powers it exercises by virtue of authority derived from the State government, and in obedience to State

laws." A county is not a corporation in the strict and proper sense of that term.

In speaking on that subject in the case of The Hann. & St Jo. R.R. Co. v. Marion County, 36 Mo. 303, this court used the following language: "A county is a political division, and denominated a *quasi* corporation. It assumes on itself some of the duties of the State in a partial or detached form, and is to be considered in the light of an auxiliary of the government, and as a secondary and deputy trustee of the people." And in The State, etc., v. The County Court of St. Louis County, 34 Mo. 546, it was decided that a county was not a private corporation, but an agency of the State government, and that, although the Legislature could not take from the county its property, it had full power to direct the mode in which the property should be used.

Judge Cooley, in his recent treatise on constitutional limitations, lays down the doctrine that counties, townships, school districts and road districts do not usually possess corporate powers under special charters, but they exist under general laws of the State, which apportion the territory of the State into political divisions for convenience of government, and require of the people residing within those divisions the performance of certain public duties as a part of the machinery of the State, and, in order that they may be able to perform these duties, vest them with certain corporate powers. Whether they shall assume those duties or exercise those powers, the political divisions are not allowed the privilege of choice. The Legislature assumes this division of the State to be essential in republican government, and the duties are imposed as a part of the necessary and proper burden which the citizens must assume in the process of self-government. Their functions, therefore, are wholly of a public nature, and there is no room to imply any contract between them and the State, in their organization as corporate bodies, except that which springs from the ordinary rules of good faith — that the property they shall acquire, by local taxation or otherwise, for the purpose of their organization, shall not be seized by the State and appropriated in other ways. They are, therefore, sometimes called *quasi* corporations, to distinguish them from the

corporations in general, which possess more completely the functions of an artificial entity. (Cooley on Const. Lim. 240.)

The decisions have been uniform on this question, and they universally sustain the foregoing principles. That the county holds its property in subordination and under the control of the Legislature has frequently been adjudged in this court. Thus, in an early case, it was held that the Legislature was competent to relieve from a forfeiture, even where the money was going to a county, and that after judgment; and that where money accrued to a county it could not be said to be so vested as to prevent the control of the Legislature. (Conner v. Bent, 1 Mo. 235.)

In the case of The State, etc., v. The County Court of St. Louis County, *supra*, it was announced as a settled rule that an act directing the county to appropriate part of its revenue, already collected, in a particular way, was not unconstitutional as being retrospective in its operation; that it took away no vested right, nor did it impair the obligation of a contract; that acts of the Legislature providing the objects for which county funds could be appropriated were at all times subject to repeal or alteration, so as to appropriate the funds in a manner or to objects different from those before provided. (See also Hamilton & Treat v. St. Louis County, 15 Mo. 3.) The State, although it donated the swamp lands to the counties for certain purposes, did not divest itself of all control or management over the same. The rule which applies to persons, disabling them to confirm void acts by subsequent deeds, is not to be taken in an unqualified and unlimited extent as to acts of sovereignty — acts of legislation not conflicting with constitutional right. But there is a broad line of distinction to be drawn between acts done without authority, and which are absolutely void *ab initio*, and acts done under authority and which are irregularly and informally done. Where a county made a subscription to railroad stock under a supposed authority in the company's charter, and doubts were entertained as to its validity, a subsequent ratification by the act of the Legislature was adjudged to cure the defect and render the subscription binding. (Hann. & St. Jo. R.R. Co. v. Marion County, 36 Mo. 294; Bridgeport v. Housatonic R.R. Co., 15 Conn. 475.)

The case of The Commissioners of Shawnee County v. Carter, 2 Kansas, 115, cited and strongly relied on by the counsel for respondent, is not inconsistent with the view herein taken. There the officers, acting on behalf of the county, did not proceed to execute a power in an irregular or informal way, but they undertook to go wholly outside of their duties, and bind the county without any authority. The court held that their acts were entirely void, and that a legislative act of confirmation was insufficient to give them binding force and validity. The court in the opinion says: "The act differs from those retrospective laws which are frequently passed, supplying defects and curing informalities in the proceedings of officers and tribunals acting within the scope of their authority. The county commissioners were not acting within the scope of their authority in issuing these bonds. They did not conform to the law, only in an irregular way, but they broke down the barriers which the law had raised in a very regular way, and their acts in the premises were void — not for want of any formality or regularity, or mistake as to time or otherwise, but for want of power under the laws."

The case of The State v. The Bank, etc., 45 Mo. 528, is not an authority here, nor has it any reference to the question we are now considering. There, a sub-agent made a sale of stock without any authority whatever; his act was void throughout, and the agent of the State attempted to ratify the void proceeding. We held that the agent himself could not have legally made the sale in the mode pursued by the sub-agent, and therefore he was utterly powerless to ratify it; that nothing but an express confirmation upon the part of the State — the sovereign power — could impart to it validity, and the case showed that the State repudiated the transaction. The sale was not carried on under authority, in an irregular or informal manner, but without authority and in defiance of the law.

That the County Court had full power and jurisdiction of the premises in this case is undisputed. Their proceedings are marked by some irregularities. There is nothing to show that the sales were not made in good faith, and the purchase money

for the lands was duly received and paid into the county treasury. When taking into consideration the peculiar relation which the counties bear to the State, I am of the opinion that it was competent for the Legislature to confirm the titles. No vested right of the citizen is interfered with. The State is only rendering valid the acts of one of her political divisions, which was done under and by virtue of the authority of the Legislature, but was carried out and executed in an informal manner. The act of 1868 is a legislative confirmation, and simply makes good the acts of the officers in the same manner as if they had proceeded in a formal, regular way in the execution of their authority.

Even if the act should have only a prospective operation, still it is a grant which we think the Legislature had a right to make. It takes no property from the county, but says that the title to the land, which was sold and paid for under previous laws, shall vest in the purchasers. If there was any fraud or other infirmity attending the sale which would render it void, those questions are still open and are not touched by this decision.

I think the judgment of the court below should be reversed. The other judges concur.