THE STATE, *ex rel.* BALDWIN T. WHITE, Plaintiff in Error, *v.* DAVID GOODFELLOW, Defendant in Error.

### March 21, 1876.

1. Under an act of the General Assembly, approved March 13, 1867, entitled "An act to enable the city of St. Louis to procure a supply of wholesome water," the board of commissioners thereby created was authorized to require the exclusive use by consumers of a particular kind of hydrant, which the board considered best adapted to promote convenience of supply with the least possible waste. Such a requisition was a reasonable exercise of the discretion committed to the board in its control of the water-works, and should not be interfered with by the courts.

2. Immaterial issues properly refused by the court.

3. In a *mandamus* proceeding, where the only issue raised is one as to the extent of authority conferred by law on an official body, neither party has a right to demand a jury.

4. Where the facts admitted by a failure to reply cannot, if true, entitle the adverse party to the relief sought, no judgment can be entered for want of a reply.

5. The right of the board of water commissioners to make proper regulations concerning the use of water cannot be affected by any considerations with reference to the restraint of trade.

ERROR to St. Louis Circuit Court.

*Affirmed.*

*Bell & Thompson,* for plaintiff in error, cited: Session Acts 1867, p. 184; Session Acts 1868, p. 292; St. Louis. v. Weber, 44 Mo. 550; Ruggles v. Collier, 43 Mo. 375; City v. Clemens, 43 Mo. 395; Chicago v. Rumpff, 45 Ill. 90; Bloomington v. Wahl, 46 Ill. 489 ; Wraford v. People,. 14 Mich. 41; Phillips v. Allen, 41 Penn. St. 481; Hudson. v. Thorne, 7 Paige (N. Y.), 261; Austin v. Charlestown,. 16 Pick. (Mass.) 121; Boston v. Shaw, 1 Metc. (Mass.) 130; Commissioners v. Gas Co., 12 Penn. St. 318; Dunklin County v. District Court, 23 Mo. 454; 2 Wag. Stat. 925, sec. 4; State ex rel. v. Lafayette County Court, 41 Mo.. 221; Dill. on Mun. Corp., sec. 93; Vaughn v. Scade,. 30 Mo. 600; State, etc., v. Stewart, 32 Mo. 384; State,. etc., v. Lawrence, 38 Mo. 539.

*Samuel Reber,* for defendant in error.

BAKEWELL, J., delivered the opinion of the court.

This was an application for a *mandamus.* Defendant was. assessor of water rates of the city of St. Louis.

The relator of plaintiff alleges, in his petition, that he is a resident of the city of St. Louis ; that the water supply of said city, and the control of its water-works, are, by law, intrusted to a board of water commissioners ; that, under the regulations of said board, all persons introducing water from said water-works must first procure a permit from the assessor of water rates ; that it is also essential that the water consumer provide himself with a hydrant on his. premises, through which the water is supplied ; that such hydrants are the private property of the consumer; that.

eight styles of hydrants are used in St. Louis, of which one is called the "Valve," and another the "Gallagher," hydrant; that, on a day named, petitioner had put up a "Valve" hydrant, and in all other respects complied with the rules of the board of water commissioners and the city ordinance, and then applied to respondent for a permit to make an attachment between his premises and the main water-pipe on Green street, St. Louis, which respondent refused, on the sole ground that relator's hydrant was not the "Gallagher" hydrant. Relator says that, therefore, he cannot use the city water without getting a "Gallagher" hydrant, which he avers he ought not to be compelled to do; and being, he says, without other remedy, he asks for a writ commanding respondent to grant him the permit to make the attachment between his "Valve" hydrant and the main city water-pipe.

An alternative writ was issued, to which respondent made return, setting up, as his ground for refusing to allow plaintiff's relator to make an attachment of the main pipe to his "Valve" hydrant, a resolution of the board of water commissioners, to the effect that the assessor of water rates be instructed to notify all bonded plumbers that, after June 1, 1873, all hydrants connected with the city water-pipe shall be of the patent purchased by the city, of Joseph Gallagher, the right to use which is guaranteed by the board. This resolution was, he says, adopted by the board to prevent a waste of the city water, which he alleges to have been universal, and excessive, and ruinous. He further says that all other hydrants used in St. Louis prior to April 17, 1873, allowed a continuous flow of water when once set going, unless this was stopped by turning the cock; whilst the "Gallagher" hydrant is self-acting, stopping the water when the hand is removed, causing a great saving of water, whilst the other hydrants caused great waste; consequently, the city purchased the right for all bonded plumbers of the

32

city to use this hydrant, without paying a royalty, the city looking to the saving of water only for its reimbursement of this outlay; that the resolution of the board was deliberately adopted, from conviction of its necessity, founded upon an examination of the comparative merits of the different hydrants in use; that the "Gallagher" hydrant costs the consumer no more than any other hydrant, is more simple, less liable to derangement and to be affected by frost; that the resolution of April 17, 1873, applies only to hydrants set up after that date; that the use of the patent is furnished to consumers gratuitously; that relator, well knowing the resolution aforesaid, and order of the board of water commissioners, wantonly procured a "Valve" hydrant, and insists upon a connection with the main pipe, merely to bring up before the courts the question of the legality of the aforesaid rule of the board, and that respondent refused to allow the connection to be made for the reason set forth.

Relator then moved for a peremptory *mandamus* on this return, first, because the return set up no good reason for the refusal; and, second, because the resolution of the board set forth in it is void.

This motion was overruled, and relator then filed a traverse to the return, in which, by a negative pregnant, he admits the resolution of the board set out in the return, and also the purchase by the board of the right to use the "Gallagher" hydrant for all the bonded plumbers, and says that, if there was any waste of water from the reservoir and mains, as claimed by respondent, ample remedies existed at the time to prevent it; and cites an ordinance of the city imposing a fine on any person permitting a waste of the water, and also giving the board of water commissioners power to ascertain, by meters, the quantity of water in any case. The traverse further alleges that, these ample remedies being provided, the use of the "Gallagher" hydrant

was unnecessary, and imposed a useless burden and expense on consumers, and that it establishes a monopoly, is in restraint of trade, and is illegal.

To the traverse, no reply was filed. When the case was called for trial, the relator moved for judgment by default against respondent, for want of reply. This motion was overruled. Relator then demanded a jury to try the issues, which was overruled.

The relator then presented a statement of the issues to be tried in this case, in the form of questions to be answered by a jury, as follows:

1. "Was there any material waste of the water of St. Louis, by consumers thereof, by reason of the defective character of the hydrant in use at and before April 17, 1873?"

2. "Were the ordinances of the city of St. Louis, set out in the denial of the returns made herein, sufficient, if enforced, to prevent any material waste of the water of the city at and before April 17, 1873?"

3. "Is any material saving of the water of the city effected by the use of the "Gallagher" hydrant, as compared with the use of any other hydrant heretofore manufactured or for sale in the city of St. Louis?"

Which statement was rejected by the court, and an exception saved.

The trial then proceeded before the court, without the intervention of a jury, and the respondent introduced evidence tending to show that at and prior to April 17, 1873, a material waste of the water of the city existed; that, owing to this fact, an investigation of the various hydrants in use was made by the board of water commissioners; that thereupon the resolution of April 17, 1873, was adopted, with a view to correct such waste of water; that the "Gallagher" hydrant was less liable to get out of repair, and less liable to waste water than the "Valve," or any other hydrant in use.

The relator introduced evidence tending to show that the

"Gallagher" hydrant was more liable to get out of repair, and more liable to waste water, than the "Valve" hydrant.

At the conclusion of the testimony, the court entered judgment overruling the motion for a peremptory *mandamus*, and dismissing plaintiff's bill.

Within due time the relator filed a motion for a new trial, on the following grounds :

1. Because the court erred in refusing a jury trial.

2. Because the judgment was against the law and the evidence.

3. Because the court refused to enter judgment by default against the respondent, for failure to reply.

4. Because, upon the pleading, the relator was entitled to a peremptory writ of *mandamus*.

5. Because he was entitled to such writ under the evidence in the case.

6. Because the court erred in the statement of the issues to be tried in the case.

7. Because the court refused to try the issues in the case.

This motion was overruled. All exceptions were duly saved, and, on appeal to general term, the judgment having been affirmed, the cause is brought before us by writ of error.

The question presented by the record is the validity of the resolution of the water board, requiring all persons desiring to avail themselves of the use of the water collected and distributed by the city to form a connection between their premises and the main water-pipe by means of the "Gallagher" hydrant alone.

The grant of power to the board of water commissioners is derived from an act of the Legislature creating the board, approved March 13, 1867, and entitled "An act to enable the city of St. Louis to procure a supply of wholesome water." By this act, a board of water commissioners is created, with general powers to convey the water of the Mississippi through the city of St. Louis, and

to do all things necessary for the purpose of purifying, con-; ducting, straining, and distributing this water. The 6th section of this act provides that the city may, by the agency of this board, do all things necessary for carrying this act into effect. The 7th section provides that said board shall have control of all matters relating to the water supply in the city of St. Louis, and of the management and direction of the water-works. The 8th section provides that this board shall collect the revenue accruing· to the city for water, and keep a full and true account of all licenses issued for the use of water.

It will hardly be pretended· that, under and by virtue of these powers, the board of water commissioners has no right whatever to regulate the supply of water. On the contrary, it clearly. appears that it is its most imperative duty to attend to this, to prevent unnecessary waste of this water collected and distributed at a vast expense, and to control its distribution in such a way that each license issued may, as far as that can be conveniently done, grant a use of water proportioned in some measure to the amount paid therefor. The board—which cannot, without a criminal neglect of duties imposed by this act, permit each citizen, at will, to bore a hole into its distributing pipes and attach thereto a tube conducting a perpetually flowing stream into his private premises—has certainly a right to direct that something in the nature of a hydrant—that is, of an instrument by which the flow of water may be checked and regulated at will—shall be placed at the end of the connection between the main pipe and the tube conducting the water into the tenement of the consumer. But, if it had a right to compel the use of a hydrant, it is difficult to see why it may not select, amongst many varieties of hydrants, that one which to the board may seem the best fitted to promote the end of convenience of supply with the least possible unnecessary waste, and, having selected such a hydrant, to insist upon its use by all persons seeking to connect a private

water-pipe with the public main.   A board such as this,.
created for municipal purposes, may exercise, not only the
power granted to it in express terms, but also any power
essential to the declared object and purposes of its creation,
and also any fairly implied in, or incident to, the powers.
expressly granted.   Now, as this board may exercise all the
powers, within the fair intent and purpose of their creation,.
reasonably proper to give effect to powers expressly granted,.
in doing this they must have a choice of means adapted to
these ends.   *Bridgeport* v. *R. R. Co*. 15 Conn. 475.   An act.
of the Legislature investing the County Court with power
to do certain acts necessarily implies the right to use fit
and appropriate means.   *Hannibal & St. Joseph R. R. Co*. v.
*Marion County*, 36 Mo. 294.   We are of the opinion that the
board of water-works of the city of St. Louis, by virtue
of the act cited, has a right to adopt a particular hydrant,
and insist upon its use by all persons seeking connection
with the water-pipes of the city, and that, unless they act.
unreasonably or oppressively, their action is conclusive, and
is an exercise of discretion with which the courts will not
interfere.   Judicial tribunals do not interfere with munici-
pal corporations in their internal police and administrative
regulations, unless some clear right has been withheld or
some wrong perpetrated.   To hold that the courts could
interfere in such a case as that made out by the relator here,.
would be to remove the control of the water-works from
the board expressly created for that purpose, and vest it in
the courts.   The board is not bound to use a hydrant abso--
lutely the best.   Nor are the courts to pass upon the relative
efficiency of these machines for regulating the water supply.
The relator very clearly had no case, and the Circuit Court.
could not do otherwise than dismiss his bill.

The court properly rejected the statement of issues pre--
sented to be tried ; they were wholly immaterial, for the
reasons already stated.

There was no error in refusing a jury trial, because there.

were no material issues of fact to submit to the jury ; had the case been otherwise, in a proceeding of this character, the parties cannot insist upon a jury.

The court committed no error in overruling relator's motion for judgment for want of a reply. No reply was needed ; the facts admitted for want of reply, if true, would not entitle plaintiff to the relief he asks.

· There is nothing whatever in the allegation that the purchase of the right to use the "Gallagher" hydrant is a monopoly, or in restraint of trade. · These points are not insisted upon in argument, and demand no notice at our hands. The board cannot be compelled to sanction the use of an inferior hydrant, or of a variety of hydrants, for the purpose merely of enlivening the local trade amongst plumbers. ·

We see no error committed by the court below, and the judgment of the Circuit Court is affirmed. Judge LEWIS concurs ; Judge GANTT, of counsel below, did not sit.